# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-0836
Filed July 22, 2026

————————————

**In re the Detention of Joseph Matthew Smith**

**Joseph Matthew Smith,**
Respondent–Appellant.

————————————

Appeal from the Iowa District Court for Buena Vista County,
The Honorable Shayne Mayer, Judge.

————————————

**AFFIRMED**

————————————

Trevor J. Andersen, Assistant Public Defender, Special Defense Unit, Des
Moines, attorney for appellant.

Brenna Bird, Attorney General, and Anagha Dixit (until withdrawal), and
Nicholas E. Siefert, Assistant Attorneys General, attorneys for
appellee State.

————————————

Considered without oral argument
by Tabor, C.J., and Badding and Langholz, JJ.
Opinion by Badding, J.

**BADDING, Judge.**

Joseph Smith[1] was civilly committed after a jury determined that she was a sexually violent predator under Iowa Code chapter 229A (2023). On appeal, Smith challenges the sufficiency of the evidence supporting the jury's verdict. Faced with competing expert testimony, Smith tries to undercut the predictive recidivism opinion of the State's expert by arguing that the expert's statistical analysis was speculative and that the expert's clinical judgment ignored mitigating factors. We reject these arguments and affirm the jury's verdict.

## I.    Background Facts and Proceedings

Smith's sexual offenses began while she was a child in Louisiana and a victim of sexual abuse herself. In 2011, when Smith was fourteen or fifteen years old, she was charged with indecent exposure after masturbating in front of two girls under the age of seven on a school bus. Smith was on probation for that offense in Louisiana until April 2012. That summer, Smith moved to Iowa to live with her father and almost immediately began sexually abusing her three-year-old half-sister. Smith pled guilty to second-degree sexual abuse and was placed in a residential treatment facility.

During Smith's sex offender treatment at the facility, Smith disclosed five undetected minor victims in Louisiana. One of those victims was an eleven-year-old girl whose genitals Smith touched under a lunchroom table. Another was Smith's one-year-old half-sister. In 2013, while Smith was still at the facility, she was charged with a new sexual offense. The victim was a

---

[1] Joseph Smith identifies as a transgender woman and goes by "Josie Smith." To stay consistent with the proceedings and pleadings, all references to Smith are with she/her pronouns.

ten-year-old boy who Smith mentored at the facility. Smith was convicted of lascivious acts with a child for that offense and placed on probation.

After thirteen probation violations,[2] the district court revoked Smith's probation in 2015 and imposed the previously suspended ten-year prison sentence. While in prison, Smith refused sex offender treatment, was disciplined for sexual misconduct, and engaged in more than one thousand consensual sexual interactions with other inmates.

Smith was released from prison in 2020 under a special sentence of lifetime parole. She moved into a residential treatment facility and began sex offender treatment. Although Smith initially did well in treatment, she soon violated the conditions of her parole. In July 2021, Smith's parole officer discovered that Smith had been drinking alcohol and that she had engaged in a sexual relationship with another parolee at the facility. A few months later, in October, the parole officer found a tablet device that Smith was using to view pornography and to access a "hookup app" called Grindr. Smith admitted to the violations and was required to restart sex offender treatment.

But by January 2022, Smith had violated her parole again. During a home compliance check, Smith's parole officer found a cell phone that did not have the required electronic monitoring software on it. Smith told the parole officer that she had used the phone to view child sexual abuse images around ten times. The children she viewed were between five and eight years old.

Smith's parole was revoked, and she was sent back to prison. While there, Smith again participated in sex offender treatment and admitted that she was attracted to pre- and post-pubescent children. Smith estimated that

---

[2] None of the violations were sexual in nature.

she had sexually abused ten to fifteen children over the course of her offending history, although Smith said that she committed all the offenses before she was an adult. One of her previously undisclosed victims was a six-year-old child who Smith sexually abused at least five times a week for more than two years. Smith disclosed that although she "still struggle[d] to keep from masturbating to thoughts of [her] victims or a minor," since being back in prison, she "mainly masturbate[d] to thoughts of men that [she] saw around."

Smith completed sex offender treatment in September 2023, and the State petitioned to have her civilly committed as a sexually violent predator in December. After a series of continuances, the State's petition was tried to a jury in April 2025. Each side presented evidence from licensed psychologists with experience in evaluating sexually violent predators. The State called Dr. William Schmitt, and Dr. Luis Rosell testified for Smith. Both experts diagnosed Smith with pedophilic disorder and agreed that she had a mental abnormality. Although both also placed Smith in the "well above average" risk category for reoffending under actuarial assessments, Dr. Rosell testified that Smith was not likely to engage in future sexually violent offenses. He focused on Smith's lack of "hands-on" sexual offenses since 2020, completion of sex offender treatment, and gender-affirming care. Dr. Schmitt disagreed, testifying that Smith lacked insight—even after treatment—into her sexual offense history, which increased her risk to reoffend. After looking "at the case as a whole," Dr. Schmitt concluded that Smith was more likely than not to reoffend if she was not confined in a secure facility.

The jury found that Smith was a sexually violent predator, and the district court ordered Smith's commitment under Iowa Code section

229A.7(5)(b). Smith appeals, challenging the sufficiency of the evidence supporting the jury's verdict.

## II. Standard of Review

We review challenges to the sufficiency of the evidence for the correction of errors at law. *In re Det. of Betsworth*, 711 N.W.2d 280, 286 (Iowa 2006).

> If there is substantial evidence upon which a rational trier of fact could find the respondent to be a sexually violent predator beyond a reasonable doubt, we are bound by the jury's finding. To determine whether the evidence was substantial, we consider the entirety of the evidence presented in a light most favorable to the State, including all legitimate inferences and presumptions which may be fairly and reasonably deduced from the record. Evidence is not substantial if it raises only suspicion, speculation, or conjecture.

*Id*. at 286–87 (cleaned up).

## III. Analysis

At the trial on the State's petition to civilly commit Smith, the jury was required to determine whether the State proved beyond a reasonable doubt that Smith was a sexually violent predator. *See* Iowa Code § 229A.7(5)(a); *In re Det. of Pierce*, 748 N.W.2d 509, 512 (Iowa 2008). A person is a sexually violent predator if the person (1) "has been convicted of a sexually violent offense"; (2) "suffers from a mental abnormality"; and (3) the mental abnormality makes the person "more likely than not to engage in predatory acts constituting sexually violent offenses, if not confined in a secure facility." *Pierce*, 748 N.W.2d at 512; *see also* Iowa Code § 229A.2(15) (defining "sexually violent predator").

Smith does not contest the first two elements, but she claims the State failed to prove the third element beyond a reasonable doubt. Smith argues:

> The expert testimony revealed that the actuarial tools used to predict Ms. Smith's future risk are too imprecise to support a finding beyond a reasonable doubt. The clinical judgment of Dr. Schmitt is also flawed and ignores significant mitigating factors. The State's case, built on speculative statistics, ignores overwhelming evidence of Ms. Smith's amenability to treatment and profound personal change, creating a substantial reasonable doubt that she meets the narrow criteria for commitment.

This argument fails to acknowledge that both parties' experts used similar methodologies in their analyses. Under the Static-99R, the "gold standard" for actuarial sex offender risk assessments, the experts scored Smith at a 9 out of 12.[3] That score placed Smith in the "well above average" risk category—the highest available under the instrument—and in the 99.9 percentile for risk of reoffending. In addition to the Static-99R, Dr. Schmitt evaluated Smith under the VRS-SO, a dynamic risk assessment tool that incorporates self-reported factors in its calculation. Smith was in the "well above average" risk category on that instrument too. Combining Smith's scores from the two instruments, Dr. Schmitt concluded that Smith had a 71% (plus or minus five points) lifetime risk of reoffending.

Although Dr. Rosell used a different dynamic risk instrument, the Stable-2007, he also calculated Smith's dynamic score at "well above average." Yet Dr. Rosell testified that in his clinical judgment, Smith was not more likely than not to commit future sexually violent offenses if not confined. He supported that conclusion by highlighting Smith's completion

---

[3] The average score on the Static-99R is a 2.

of sex offender treatment, the time she spent in the community without a "hands-on" offense,[4] and her gender-affirming care.

Dr. Schmitt, however, testified that the results of the actuarial assessments aligned with his clinical judgment about Smith's recidivism risk. He explained:

> [Y]ou have to look at the case as a whole. Certainly these risk measures are very useful and important and they can kind of ground an evaluation and give you a good ballpark for a risk estimate. But you have to also take a look at the person. And again, what have they done? What have they learned about what they've done? How do they talk about it? What's their concept of what their remaining risk is going forward, and how well does that map onto the risk measures?

In Dr. Schmitt's opinion, Smith lacked insight into her past offending behavior and risk factors, even after completing treatment. For instance, when Dr. Schmitt asked Smith about her risk factors, she answered, "being alone with a child." But after more discussion, Dr. Schmitt testified that Smith "backed off on it and said 'maybe that wouldn't apply to me now because I've changed. I'm not interested in kids anymore.'" Under that thinking, Smith told Dr. Schmitt that while she wouldn't go into a bathroom with a child, she could do so safely if needed. She also thought that she could safely babysit a child overnight. And during her testimony at trial, Smith denied committing many of the undetected offenses she had disclosed during treatment. She also denied viewing child sexual abuse images on the unauthorized cell phone she had while on parole in 2022.

---

[4] Dr. Rosell distinguished Smith's "hands-on" sexual abuse offenses from the "hands-off" offense of viewing child sexual abuse material.

In the end, Dr. Schmitt concluded:

[There is] more work for [Smith] to do in treatment to learn about, again, what she did, what played into that, and how does she manage that more safely, even in the institutions that she's in, let alone the community where she'll ultimately have a lot more freedom. So my expectation is that she will participate in more treatment, and essentially she'll get better. She'll get better with learning about herself and learning how to be safer going forward so that she can be successful at some point in the community.

In this battle of experts, "it was for the jury to decide which of the experts was more credible and whose opinion the jury would accept." *In re Det. of Altman*, 723 N.W.2d 181, 185 (Iowa 2006) (cleaned up); *see also In re Det. of Hennings*, 744 N.W.2d 333, 340 (Iowa 2008) ("The jury was free to reject the testimony of [the respondent's] expert witnesses and to instead accept the testimony of [the State's expert witness]."). As the reviewing court, we "readily defer to the [fact finder's] judgment as it is in a better position to weigh the credibility of the witnesses." *State v. Jacobs*, 607 N.W.2d 679, 685 (Iowa 2000). That judgment is supported by substantial evidence in the record. We accordingly affirm the jury's verdict finding that Smith is a sexually violent predator.

**AFFIRMED.**